Hart v. Credit Control Good morning, Your Honors. May it please the Court. I'm Joseph Panvini. I'd like to start by the discussion of whether the messages that were left in Ms. Hart by the debt collector constitute a meaningful disclosure of the caller's identity. To determine that question, we must first look at the language of the statute, which says that a debt collector may not place telephone calls without meaningful disclosure of the caller's identity. Now, what's significant there is that they use the term a debt collector and then the caller in the same breath. And canons of statutory construction would tell you that by using the caller must mean something different. Otherwise, they would have just said the debt collector again. They would have said the debt collector may not place telephone calls without meaningful disclosure of the debt collector's identity. In this case, the debt collector is credit control. And they did disclose their credit control, but the caller, the individual caller, did not disclose her identity. And because this is the caller there, again, it must mean something different than just credit control. So that's why there's a lot of case law about this. There's over about 20 cases that are cited in the brief that discusses three necessary elements for a meaningful disclosure of a caller's identity. The first of which is the caller's name, the person placing the call. The second being the debt collector, the debt collection company's name. And then the third being the nature of the business, i.e., that they are a debt collector. Now, what does meaningful disclosure add to caller's identity? The statute would read, according to you, that the apparently that he must provide the caller's identity. Right. Well, they could just say, you know, hi, this is Joe, call me back. But what is it in the statute that says meaningful disclosure as a modifier of the caller's identity? Right, that they must disclose their identity in a meaningful way. So not just their name. While their name is a necessary element, each of the elements standing alone is not sufficient. So the meaningful – But the caller here says this is credit control calling. Right. Why isn't that sufficient? It's the debt collector who's calling. Your argument is that the person to whom Ms. Hart owes the debt has to be disclosed in order for it to be a meaningful disclosure? Part of the disclosure, yes. Not necessarily who they owe the debt to, but the debt collector that's calling. I mean, this is John, this is Mary, this is operator 111. Is that it? That's not it, Your Honor, but that is part of – You've got to have John Jones? They have to use a name that allows – John Jones calling? A name that allows the debt collector, the employer, to identify – How about if he said, this is John and does not – had not disclosed credit control? Would that do it? No, Your Honor, that would also be a violation. You have to do credit control and this is John. Yeah, and disclose the nature of the call, that they're a debt collector. Wait a minute. I'm confused now. I thought the call is this is credit control calling with a message. This is a – this call is from a debt collector. That was the call, right? Correct. They disclosed two of the three elements that all these courts have said are necessary for meaningful disclosure of the caller's identity. Not just the debt collector's. Some courts report to go both ways, don't they? Well, of all the cases to have considered it, I believe the lower court is the only one to have found that the caller does not need to identify themselves by name. This is about a debt. Is that it, period, or a debt with somebody? Yes, Your Honor. Identify the debt? They don't have to identify the debt in the message. Just say the word debt. Yes. Your argument is that – You need to disclose the nature of the business as part of it. Quality control, that's okay. That was satisfied. I'm John Jones. That's okay. You need to have all three together, Your Honor. I understand. Quality control, this is a call from quality control. My name is John Jones. I'm calling about a debt. Yes, Your Honor. That satisfies everything. Yes. Okay. So what was missing is the name. Yes, Your Honor. The caller's identity in order to disclose the caller's identity. The employee, as it were, of credit control. Yes, Your Honor. And this interpretation is supported by the FTC commentary on this matter. Why do you have to have that person? Sorry? I don't understand the question. Why do you have to have the name of the person? Well, first, this is a matter of statutory interpretation. The callee knows where it's coming from and knows the number. Well, the individual who's calling is an important aspect of – Well, you got the individual's number. Suppose the individual said my social security number and rattles it off, and here's my phone number. Is that okay? If they get their own social security number? Yeah, here's my – something other than a name. Yes, Your Honor, that would be okay as long as it allowed for that person to be identified. Well, why doesn't credit control satisfy that? I mean, the meaningful disclosure of the debtor's identity is the caller is credit control. He just has an employee. A corporation acts through their agents, an employee. So wasn't that disclosed? It's credit control. Credit control was disclosed. But one of the biggest abuses by a collector is obviously it all happens through the employees. And so the consumer has a right to know specifically who the identity of the person is that's calling them. An anonymous caller is more apt to make threats. Well, they left a telephone number. What about the telephone number? Well, they left a telephone number. Yeah, that provides for – that's credit control's number. It doesn't allow it to identify the individual. Credit control is the entity seeking the debt, right? Yeah, through their employee, yes. But I would like to – So the name of the employee has to be disclosed? Yes, yes. The full name? Yeah, some way that it permits consistent identification. The name on the birth certificate? That's not their full legal name. I'm not being facetious. No, no, I understand. You can litigate over John Jones. You need a name that allows them to be identified. No, no, you can have a case of John Jones. Well, John Jones is too common. I need it more specific. Is this John Quincy Jones or John Adams Jones? No, Your Honor, I wouldn't think of it that way. The full name that the person goes by? No, only enough so that it can be identified. If we're going to write an opinion, what do we put in there about the name? A name that allows for them to be identified. No, no, no. We've got to spell it out because we want to avoid litigation. Certainty in this area of the law is very important. You can look to the Federal Trade Commission's commentary about that where they say that concerning the use of the alias. Will you tell us what to put in the opinion? What? I'm sorry? Tell us what to put in the opinion, the full name as it appears. Either first and last name or a false name but a consistently used alias. A false name? Yeah, an alias or a desk name. There's a case. You mean to tell me that we're going to go along with aliases? Or false names? Well, there's a reason to allow a debt collector to use a false name. It's not an enviable job, and so they may not want to. If they're calling their neighbors, perhaps, they can use a false name. 9,000 years ago before you were born, they had a finance company on the radio. They had ads, and it was from Friendly John Adams. So if you could say, hey, this is Friendly John Adams, and that's a unique identifier for the particular employee, then that would be allowable. I'd like to move on to the second part of my case here, Your Honor, given that I'm short on time, and that is whether the message is our communication, as that term is defined. Has any court ever held that a voicemail is the first communication? Yes, Your Honor. Where? There's several within Florida and elsewhere that are cited. District court cases? Yeah, district court cases. No circuit court cases have addressed this. So this court should probably clear that up? Yes. And so, again, to look at the language of the statute, it's about conveying information regarding a debt, directly or indirectly, to any person through any medium. It's a very broad definition. And so what information is being conveyed by this message? This is credit control calling with a message. This is a debt collector calling me back at this number. So the information that's being conveyed to the consumer here is that, well, okay, credit control is calling me. Who's credit control? Well, they're a debt collector. Begging the question, why is a debt collector calling me? It must be to collect my debt. They're not calling to talk about the weather. They're not calling to talk about sports. They're calling regarding a debt. And, again, the FTC commentary here is instructive about, as it discusses what is or is not a communication. And where they say an example of a situation that's not a communication is if the debt collector is requesting a consumer to return the call and the debt collector does not refer to their status as a debt collector. Only if they do not refer to their status as a debt collector is the debt collector not conveying information regarding the debt. So if they are saying that they're a debt collector, well, that is information regarding a debt. There could be more specific information, but the statute doesn't say specific information. It just says information if they're calling regarding a debt. What can we write in the opinion? Tell us exactly what the language is going to be. Help us write the opinion. This message is a communication because it conveys. Tell us what the instructions are from this court to the industry out there. What should we write in the opinion exactly? Somebody reading it knows exactly what to put on the telephone. If you're a debt collector and you're first communication with a consumer, you must provide the full. Tell us exactly what it reads like. Give us a sentence, a hypothetical. Hypothetical situation. Yeah, take this credit control and spell it out exactly the way it should have been so that it would satisfy the law. Credit control, in placing the message, they say this is. . . Read the message that we are going to put in the opinion. This is Mary Jones from Credit Control. I'm a debt collector. I'm calling to collect a debt. Any information obtained will be used for that purpose. Please call me back at such and such number. Would the opinion say that a voicemail is a communication within the meaning of the Debt Collection Practices Act, whether subsequent or initial? Yes, Your Honor, it can be. I'm not arguing that any voicemail is per se a communication as long as it's conveying some information about the debts. So if it were a voicemail that was gibberish or just dead air, that's probably not a communication. But if they're giving some information, soliciting a return phone call from a debt collector. . . The problem you have with voicemails as opposed to a letter or an email is that you can't control who is going to listen to it, and there are some other restrictions as to what can be disclosed. So a letter goes to a particular individual, and you can disclose certain information. For example, you could not disclose the identity of the creditor, how much money is owed, et cetera. You may be able to do that in a first communication by letter, but you wouldn't do it in a voicemail, which the spouse could pick up or anybody could pick up. So how do you reconcile the technology of the voicemail? Well, all those things, those more specific information like the creditor information, how much is owed, all that is not something that has to be disclosed in the initial. . . Wouldn't it violate the statute to actually include it in a voicemail? No, Your Honor, it wouldn't. Only if that were overheard by some third party, it might. If you called me and gave me that message, and I don't owe a debt, the last thing in the world I'm going to do is call that number. I may call the FBI or somebody, but I'm not going to call that number. Okay. I'm going to treat it as illicit. They want information out of me, John Jones, about a debt. I have no foggy idea what it's about. The call is intimidating. The point that Judge Robedo is making. Yeah, I agree with that. To me, that's offensive. When you don't know who's answering the telephone. The debt collector has a phone number, presumably of the debtor, but may not be of the debtor. That's correct, and I'm out of time and I can. . . Well, the law provides for a, you know, I guess. . . Forget what the law provides. I'm talking about common sense. The concern by the debt collector is that they might risk violating the law. No, no. Concern about the law requiring that kind of a phone call to be made out of the blue and the message left on an answering machine. Well, the law doesn't require the debt collector to leave a message or to make a phone call at all. You just said he did. If they're going to. . . I'm calling about a debt and I want information. Closures. And I want information. Yes, but there are other avenues of communication that are available. No, no, no. In this episode, it should have been included that I'm calling about a debt and I want information. That's what's left on the answering machine. Not to say that I want information, but to say that. . . Give me the words. . . . this is a collected debt, and any information obtained that the debt collector obtains from the consumer will be used for the purpose of. . . No, any information that you provide to me, I can use against you. They call it the mini Miranda disclosure. I know about the mini Miranda. That's why I wouldn't make a telephone call back. Right, and that's why the consumer is entitled to receive that disclosure if the voicemail is their first communication with them so that they can make that decision whether they want to call them back or not. You saved some rebuttal time. Thank you. Mr. Kohlmeier. Thank you, Your Honor. My name is Ernest Henry Kohlmeier III. I represent credit control in this matter, and we've asked the court to affirm the district court's opinion finding and granting credit control's motion to dismiss as to the aspects that, to issues that were brought before this case. I'll address them in the same order as appellants counsel as to the meaningful identity, and I think the court gets the gist and the problem of what our position actually is. We feel that the message that was left on the answering machine properly and meaningfully disclosed credit control as the caller. Technology has advanced to the stage where a live person or the substance of their name, of the individual caller's name, is irrelevant and immaterial to the call, and there's various reasons for that. Number one is if you look at the actual messages were left, the message says, call us back. It's the entity that's doing the collection, not necessarily the employee. The employee is acting as a conduit of the message of credit control. Credit control is the debt collector. That is what is for, and that's what the FDCPA was required to identify. They wanted to make sure that people were not misled into who the identity of the person being called so there wasn't any fraudulent contact. You weren't saying, hey, I'm calling. I think the problem that we have and maybe that you have is whether to create a checklist that the creditor could check off and then we wouldn't have the litigation or whether to look at each call and figure out whether it was meaningful within that context, and there are problems with both approaches. You're suggesting here kind of let's look at the context of this call and what was provided and forget the checklist because Mary or John wouldn't add anything to it, but that creates a practical problem for the court. So should we have a checklist? Honestly, Your Honor, I as a defense lawyer— I may help you. Yes. Actually, honestly, for me as a defense lawyer, I've been before the 11th Circuit on FDCPA cases before. I've been in the industry for 25 years. There's nothing more than that the industry would love to have is a safe harbor as to a notice as how to use this. To manage since 2008 to comply with FODI, which is to leave a voicemail message and not disclose to unauthorized third party, which is the Berg v. Merchants case, has been a slew of litigation that has happened that the industry and the FTC has tried to create the middle ground, and that was the result of the Zortman opinion, and that's why I attached as our supplemental authority. The FTC is looking for a way to allow agencies to communicate if they don't know that the individual is actually the consumer to leave a message that is not abusive but instructive enough to comply with both sides of these problems, and the Zortman message has been used or has attempted to be used, and that's why we put in the CFPB's report that they're using the Zortman message as a way not to circumvent the FDCPA but to comply with the FDCPA. So there is nothing more that the industry would love to have is a textbook to say if you say this, you're not going to get sued. That may be the rule of the FTC or some other agency. Is that the rule of the court to actually create a checklist, a cookbook of what should be said or not said? Well, I think one of the things... You may be poorly suited for that role. Well, I think when you look at the list of cases, there is nothing in the FDCPA under 1692's D6, nowhere in the statute that it says we have to disclose the individual entity, the individual collector's, the human, name. They put that in there. There's nothing in the statute that says that. Who's they? The courts. Those cases that they cited, they're the ones that put in, you have to put the collector's name in there. There's other courts like Judge Moody recognizes. Counsel, getting on to what Judge Rabone is talking about, we can't write a prophylactic opinion. Right. I think one of the things that is... Here's what the industry is going to do. All we can do is decide a case before us, and the question is whether or not this satisfies the statute. We had this problem back in the early 80s when they enacted the Truth in Lending Act. There were cottage industries. The Fifth Circuit was loaded. The lawyers would take a borrower and go to five loan companies in one day and borrow the maximum using the forms. And so we'd sit there in conference and say that Congress should have attached a form to the statute and that everybody uses that form. So here we are on an ad hoc basis in these cases. We've got the same problem here. I think one of the things is we're not asking you to write what would be appropriate. Well, we've got to. If there's a mistake made or not, we have to say why. We have to write an opinion. I think what we have asserted is because this message was deliberately used and modeled after the Zortman opinion that has been approved. That's why Judge Moody looking at this used the Zortman opinion and the two cases that follow along with it, that if this message is used by a debt collector in this particular circumstance where they have a voicemail message, they don't know at the initial part of the collection communication, they have not identified that Stacy Hart owns this number where they don't have a history of that, and there's a safe zone of calling someone that may be the wrong number, calling someone and identifying the debt and getting a little more information to someone that may not want the information or maybe a third party. That's a violation under the statute. We're asking that if the court affirms what credit control used in this message, the industry will follow it, and then it will be compliant, and the litigation will stop. So when they have these situations where, and the CFPB is looking for the same thing. They're looking at rulemaking as to how can a collection agency attempt a communication or attempt a contact with someone that they receive the file on and to be able to work this maneuver through the minefield to not be liable for these types of cases. They want compliance, and we found a way to do that. This is a communication issue. No, I don't. I think it's an attempted contact. I don't believe that it's a communication. Tell me the difference between an attempted contact and a first communication. Well, I think this type of message straddles the line between a call and a hang-up, which conveys information on a caller ID, just as Judge Moody had said. It leaves the identity of the caller, which would be credit control, and their phone number. The difference of what the statute says as a debt collection communication is if you go a little further down the line and you ask for a specific person, Stacy Hart, you say we're calling regarding account number 1234 owed to Bank of America or whoever it is. Please call us back for this communication from a debt collector. Understand that this communication that was left, it was designed as a subsequent communication. So this case could be decided on the basis that this is not a communication and we don't get to a meaningful closure. Absolutely, and that's what Judge Moody found, that irrespective of whether it was an initial communication, subsequent communication. And here's one thing. Judge Moody followed Zortman. Was that right? What's that? Zortman is the minority view. Zortman is the minority case view. But our position is that cases and courts like Judge Moody started to adopt it, and the FTC has used it in two consent orders to two of the largest collection agencies in these circumstances and says this is how we want you to handle these circumstances under a consent order. The majority view is that voicemails from debt collectors are per se communications under the Act. Is that right? And we disagree with that. Even if it's based on volume of people that said that, that's fine. This is a remedial statute that we are required to construe liberally in order to effectuate its remedial purposes on behalf of a consumer? Correct. And I will candidly admit it is a broad statute. However, as Judge Moody said and as Judge in the Zortman case said, it's not a per se violation just because you make any attempt. We're asking to look at the specific language. And the language of the statute as far as defining communication says that you have to convey information directly or indirectly regarding the debt. And that is the key point of this area. There has nothing been in this message that conveyed anything specific about the debt. It didn't say we're calling about the account number. We're not talking about we're calling on behalf of Bank of America. Those communications, if you look at the FOTI messages in those cases, FOTI versus NCO talked about voicemail messages can be a communication. I have no disagreement as to that. My point is that this court and what Judge Moody did below is I'm not going to take that type of black and white determination. We have to look specifically at what message is being left. Appellant's brief talked about making a phone call and a hanging up. There are some courts that found that that was a communication. Well, that's the opposite of a checklist then, what you're suggesting now that we do here. That is that we look at all of the circumstances and factors in this call and decide that. I believe, Your Honor, that the checklist that has been provided is the Zortman message. The Federal Trade Commission, the case in Zortman, Judge Moody recognized that this is the elements that would be satisfactory to communicate to a prospective consumer in these circumstances to not violate the Berg types of cases and the FOTI types of cases. This is an attempt to communicate but does not arise to a debt collection communication because they're not conveying information regarding the debt. It's a safe zone for those individuals that may not be the consumer. We see these cases all the time where the phone number may be transmitted in TCPA cases. We see that where the number is no longer that individual's and we don't want to be, and the whole purpose of the statute is that we're not communicating debt related material to either unauthorized third parties or we're not continually communicating with people for the purpose of harassment. And the result is if we get call, hang up, call, hang up, and we never speak to anybody, D5, which is right above it, says you are calling too many times and it causes a violation. This is enough of an attempt to communicate something but not regarding the debt to be considered a debt collection communication as defined under 1692A6. It does not go beyond based on the elements of the communication to show that that information crosses the threshold into a debt collection communication, which would then give rise to the disclosure. And for purposes, I know you asked counsel about what is the progression about the mini Miranda. The 1692G requires that as usually the initial communication. That is in the debt collection industry the written letter that provides the 1692G disclosures, which is the ability to dispute the debt, to ask for verification, and then the mini Miranda is the thing at the bottom that says this is an attempt to collect the debt and any information can be used for that purpose. That is conveyed in writing in the initial communication. This message is designed to be a subsequent communication to satisfy 1692E11, which merely says that the communication has to identify themselves as a debt collector. Did this precede the initial communication or follow the initial communication? The letter was out and this communication went out after that. So this is a second communication? This was designed as a subsequent communication to the 1692G notice. But the debtor already had received an initial communication? We don't know. We never got that far because this was on a motion to do so. Is it usually that the debtor has the letter first? Yes. Before this kind of a call is made? Absolutely. Because they know what they're calling about. That way they have some foreshadowing that credit control. But suppose they get the letter bounces and is returned, is not delivered. Well, in essence, in those cases, the mailbox rule under the FDCPA saves the debt collector that it was initiated and mailed. If the consumer says, I never got the letter, or that it's a different address or a wrong address, the debt collector will send out a subsequent notice. But usually when there's a verbal communication and they actually talk to somebody, these disclosures are made verbally. But normally we don't know whether they got the letter or not. The verbal one would be after the letter is written, though. Yes. So if I have three credit cards and I'm delinquent on all of those cards, when I get this message from credit control, the only thing they're telling me is they're a debt collector. I don't know which one of the debts they're calling for, right? Yes, deliberately, yes. Because they would be conveying to you, and if your son or your neighbor answers your phone, that's for your protection that they're not calling that way. Did credit control write the letter first? Credit control, the 1692 – Wait a minute. The creditor or the credit control, which one? Credit control sends out a 1692G notice. That is the first initiated action that goes out, so that – Not by the creditor? No, by themselves. By credit control? Yes, the letter would be on – In this case, tell me again, how did that – you said it didn't happen here? The letter was ordered. The phone call was made. The letter, whether it got there before or after, we don't know. But the subsequent – It's not clear on the record? Well, there's no record because this was on a motion to dismiss, and it's not part of that. But which is – I hesitate to bring that up, but since we ask about why this letter is designed as it is, he's saying that we should have put the mini Miranda at that. It's not designed that way. Well, it would make a difference whether or not the debtor had already received the letter or whether this is the first communication that the debtor received. It would, but the way that this communication is designed is in the anticipation, as Your Honor pointed out, that the first letter is mailed out, and any oral communication is then the subsequent communication. Okay. Therefore, not requiring the mini Miranda. You wouldn't have to give the mini a Miranda. Absolutely. In concordance with E11, which you don't have to once it's a subsequent communication. And this message is designed as a subsequent communication. I'm almost out of time or I'm over time. I just request that credit controls motion to dismiss on those elements that Judge Moody's decision affirming that the Zortman message is an appropriate message under the FDCPA and that there was sufficient meaningful disclosure in satisfaction of 1692 D6. We ask that the district court's opinion be affirmed. Thank you. Your Honor, as this was on a motion to dismiss, the allegations in the complaint must be taken as true. And in the complaint, there was not a letter sent first. The voice message was the first communication. It was just out of the blue. Yeah, so. With no context. I guess you drafted the complaint with that in mind. Well, that's how it happens, yes. No, I mean, if there was a letter, one would have expected, if I were the district judge, and a letter had been written, and I don't even find that out until later on, it's not in the complaint, I would have conversation with counsel about the complaint. Yes, Your Honor. If the letter had gone out first, then. No, if a letter went out first. Then they would not need them anyway. I would agree with that. Yeah. But that's not how it happens in this case. Well, we're taking this case as it had been no letter. This is just out of the blue. Right. First communication. The message is correct. I'm sitting in the courthouse, and I pick up the phone call, and I get that message. I don't know a word about it. I don't know who credit control is or anybody else or that phone number. Right, and that's. So you start telling me that giving me a mini Miranda in that context, and I'm disturbed. Right, well, because that's the first oral communication that you receive. I'm getting a call from credit control. I don't know them. They're calling me. They're giving me a warning. And to give me a phone call, I'm concerned. Right. Well, you'd be concerned anyway because they're calling to collect a debt. You're getting a call from credit control. I don't care. Wouldn't you be concerned? You don't have a debt. You don't know who they are, and you don't know anything about the phone call, and they're giving you a warning. I think that's why the warning is necessary, Your Honor. Woo-wee. All right. You want a warning on the voicemail? Well, yeah, that's what the law says that it has to be. If the first communication is written, then that's enough. But if the first communication is oral, that has to be invoked. It's going to be the same thing, is the way you say it, whether it's oral or whether it's written. Right. Well, if the oral communication comes second, then you don't need that. But if it's the first one. So it's a matter of what comes first. And the same rule would apply to both. All I'm saying is I would never return the telephone call. That's a choice that you would be entitled to make. If that's the voicemail, I don't return that call. But the consumer needs to get that information, though, in order to make the choice themselves, whether they want to return the call or not. Your colleague says it comes in a letter. But you're sending the phone call to somebody who may not be the debtor and may not know nothing about it. Well, if you're sending it to someone who's not the debtor, then they talk about this whole Catch-22 situation that they find themselves in. That's the one I'm describing. The answer is that they would not be liable for a third-party disclosure if they maintain reasonable procedures designed to avoid that. I would treat it as nothing but harassment. Well, if I got that message, if that was on my answering service, I would treat it as pure harassment. Well, I don't believe that. I don't know a thing about credit control. I don't know a phone number, and they're telling me I got a Miranda warning out of the blue about some debt that I know nothing about. I would consider that harassment. Well, I mean, that's what Congress says that you have to do. They also say that you can't harass people, too. So if complying with the law is in itself harassment, I think that would – I don't know how each individual may feel about it, but just very quickly – Just one question there, because you mentioned about how each individual may feel about it. The statute intends to control the conduct of the creditor. It has nothing to do with the debtor. Of the debt collector. Whether it's at least sophisticated or more sophisticated is not what's inside the recipient's mind. It's what the conduct was of the creditor. Correct. It would be its effect on the least – it's a hypothetical standard on the least sophisticated consumer on how they receive that information. It's an objective standard. You're suggesting that that has to be taken into account, that the least sophisticated consumer criteria applies here? Well, yes, as to what they would think upon receiving this message, what the information has been conveyed to them. In the language and the use of convey, that implies that information is being imparted or made known to somebody. So who receives that information is important, but if it's a well-educated lawyer that knows everything about the FDCPA, well, then they're not going to suffer any harm if these disclosures aren't made because they know everything about the law. But the law is designed to give the consumers unsophisticated about the law this information in their first communication with the collector. And just very briefly, Judge Robanoff, since you mentioned – You've got to wrap up your time. I just wanted to convey it's a separate inquiry whether there's been a meaningful disclosure of the caller's identity that's been made as to whether it's a communication or not a communication. They're two separate statutes. I thank the court very much for its time. The court will be in recess until 9 in the morning.